# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LAUREN COUVILLION; | ) |
|     Plaintiff | ) Civil Action No. _____ |
| v. | ) COMPLAINT |
| BASEL'S MARKET, LLC; BOCAGE SUPERMARKET, LLC; and RHONDA LINDSLY. | ) COLLECTIVE ACTION |
|     Defendants | ) |

Plaintiff Lauren Couvillion, through undersigned counsel, hereby alleges as follows:

## THE PARTIES

1. Lauren Couvillion is an individual of the full age of majority and a resident of East Baton Rouge Parish, Louisiana.

2. Defendant Basel's Market, LLC, ("Basel's") is a Louisiana limited liability company with its registered domicile address at 2125 Hood Drive, Baton Rouge, Louisiana. As of the time of this Complaint, Basel's Market, LLC, is not in good standing with the Louisiana Secretary of State.

3. Defendant Bocage Supermarket, LLC ("Bocage") is a Louisiana limited liability company with its registered domicile address at 7675 Jefferson Highway, Baton Rouge, Louisiana.

4. Defendant Rhonda Lindsly is a person of the full age of majority and a resident of this District.

## JURISDICTION AND VENUE

5. This Complaint is brought pursuant to the Fair Labor Standards Act ("FLSA").

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the state law claims pursuant to § 1367(a).

6. A substantial part of the events or omissions giving rise to this claim occurred within this District.  Venue is therefore proper in this Court.  28 U.S.C. § 1391.

7. Defendants are engaged in commerce pursuant to 29 U.S.C. § 203(s).

8. Defendants have a common business purpose and exercise unified operation and common control.  They therefore qualify as an enterprise pursuant to 29 U.S.C. § 203(r).

9. As particularly relevant to this case, both corporate Defendants' payroll is calculated by Rhonda Lindsly.  Ms. Lindsly sets company-wide pay practices and policies for both corporate Defendants, including the timekeeping and payroll policies complained of herein.

10. At all times relevant to this complaint, Ms. Lindsly had authority to hire and fire employees of both corporate Defendants.

11. At all times relevant to this complaint, Ms. Lindsly had authority to supervise and control the work schedules and conditions of employment for employees of both corporate defendants.  In particular, Ms. Lindsly controlled the terms and conditions of the corporate defendants' policies and practices relating to timekeeping and payroll .

12. At all times relevant to this complaint, Ms. Lindsly determined the method and rate of payment, including the rate of overtime payment, for employees of both corporate defendants.

13. At all times relevant to this complaint, Ms. Lindsly maintained employment records, including timekeeping and payroll records, for both corporate defendants.

14. Defendants' annual gross volume of sales made or business done, as an enterprise, has exceeded $500,000 for each year during the relevant time period.

15. Plaintiff requests trial by jury on all counts so triable.

## FACTUAL ALLEGATIONS

16. Plaintiff Lauren Couvillion began working for Basel's in August 2021.

17. Ms. Couvillion also occasionally worked at Bocage.

18. For those shifts when Plaintiff worked at Bocage, Defendants did not track her hours. Instead, Defendants paid Plaintiff in cash, in a variable amount set wholly at the discretion or whim of whatever manager happened to be on duty at the time.

19. Defendants do not provide employees with paystubs or any other records explaining how their weekly paycheck is calculated, or how many hours they are credited with in any given week.

20. In late February 2022, Ms. Couvillion reviewed her paychecks against her weekly timesheets and noticed that she was not being paid proper overtime for hours worked after 40 hours in a week.

21. First, Ms. Couvillion noticed that Defendants were improperly paying using a "decimal" hourly system instead of based on the minutes actually worked.

22. As an example, on February 23, 2022, Ms. Couvillion worked from 6:21 am to 3:47 pm. This is 9 hours and 26 minutes of work. However, Ms. Couvillion was only credited with 9.26 hours of work – which converts to about 9 hours and 16 minutes of work. She was therefore underpaid by about ten minutes on that day.

23. On February 24, 2022, Ms. Couvillion worked 8 hours and 47 minutes, but was only credited with 8.47 hours. She was therefore underpaid by about eighteen minutes on that day.

24. Defendants' practice of converting hours and minutes into decimals results in a regular and consistent reduction of employee time. In other words, an employee's credited

time will never be increased by this system – only decreased.

25.     Although these reductions may not seem substantial on a day-by-day basis, they add up over the course of time.

26.     For example, during the workweek of February 23-29, 2022, Ms. Couvillion worked 44.3 hours, but was only credited with 42.98 hours.  Defendants therefore effectively deducted 1.32 hours from Ms. Couvillion's timesheet for this week.

27.     During the workweek of March 2-March 8, 2022, Ms. Couvillion worked 44.55 hours, but was only credited with 43.53 hours.  Once again, Defendants effectively deducted more than an hour of her time.

28.     Similar deductions, of varying amounts, were made throughout Plaintiff's employment as a result of the decimal conversion process.

29.     On February 27, 2022, Ms. Couvillion sent an email to Rhonda Lindsly, who is one of the owners of Bocage, and controls payroll and bookkeeping for both companies, and copied Kalyn Anderson, the owner of Basel's.  (Ms. Lindsly is Ms. Anderson's mother).

30.     In the February 27, 2022 email, Ms. Couvillion stated: "I noticed today while reviewing my time sheet that my numbers weren't adding up the same value as my total on my sheet. After using a third party site to double check the values I realized what happened, basically the time clock was giving the hours calculate by a base 60 for the minutes and the total was being calculated by a base 100."

31.     In "Base 60," every time a series of numbers hits 59, the next digit rolls over – 2:59 pm is followed by 3:00 pm.  In "Base 100," every time a series of numbers hits 99, the next digit rolls over – 259 is followed by 260, but 299 is followed by 300.  Most everyday calculations are in base 10 or base 100, but this is not true of everything.  Inches, for example, are in base 12.  Minutes are in base 60.

32. This discrepancy is key to Defendants' underpayment, as Plaintiff's time was being *tracked* in Base 60 but *paid* in Base 100. This resulted in a predictable reduction of hours actually worked on a week-by-week basis.

33. Ms. Couvillion also noticed that she was not receiving time and a half pay for hours worked over 40, supposedly because Defendants have misclassified her as a 1099 worker rather than a W-2 employee.

34. Ms. Couvillon met several times with both Ms. Lindsly and Ms. Anderson to discuss these issues and to request full payment of her overtime and shorted hours. These meetings took place both at Bocage and at Basel's.

35. On March 9, 2022, Ms. Couvillion met with Ms. Lindsly and Ms. Anderson to discuss Defendants' underpayment of wages and overtime.

36. During the meeting, Ms. Lindsly stated that Defendants paid workers by 1099 because otherwise "you're going to start paying taxes and that's going to your checks going to be zill."

37. In reality, by paying its employees via 1099, the employer can avoid paying certain taxes which it is legally obligated to pay – thus placing a greater tax burden on the worker.

38. Ms. Couvillion is aware that other employees were also treated as independent contractors, as she was instructed to provide a W9 form (the IRS independent contractor form) to new hires.

39. Ms. Couvillion also explained how Defendants were underpaying due to the conversion of minutes into decimals, as explained above.

40. Ms. Lindsly responded by stating: "I don't understand because we've done it like this at the store all these years for 34 years..... Yeah, because I was paying like that when we

first started here. I've always paid like exactly like I'm doing now. So I've always done it that way. So I don't understand what you want me to do. I just can't go change it because you want me to."

41. On March 11, 2022, Ms. Anderson told Ms. Couvillion that, after consulting with an accountant, Ms. Lindsly decided to resolve the Base 60/Base 100 issue moving forward.

42. Plaintiff has since resigned her employment, due to the hostile attitudes which Ms. Anderson and Ms. Lindsly developed after she raised the complaints discussed above.

43. To date, Defendants have not fully repaid Plaintiff for the missing hours, miscalculated paychecks, and missing overtime.

## COLLECTIVE ACTION ALLEGATIONS

44. Plaintiff brings this complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all other current and former similarly situated employees who worked for Defendants within three years prior to the date of filing this lawsuit.

45. Other individuals working for Defendants were likewise denied overtime premiums in violation of federal law.

46. According to Ms. Lindsly, it has been Defendants' practice for 34 years to underpay overtime by miscalculating minutes as decimals, and by misclassifying employees as independent contractors to avoid paying overtime.

47. The proposed FLSA collective is defined as:

> All individuals employed by Bocage Supermarket, LLC or Basel's Market, LLC within three years of the date of the filing of the Complaint in this action, and who were not paid overtime premiums for all hours worked.

48. Plaintiff is similarly situated to the remaining members of the collective, who have all been subjected to the same unlawful payroll practices and policies.

49. Plaintiff requests that the Court authorize expedited discovery regarding the collective action allegations set forth herein.

50. Plaintiff further requests that, at the soonest practicable time, the Court order notice be given to the remaining members of the collective so that they may exercise their right to opt in to this action.

## FIRST CAUSE OF ACTION

## FAIR LABOR STANDARDS ACT (29 U.S.C. § 201 *et seq.*)

51. Plaintiff hereby realleges and reincorporates all paragraphs set forth above.

52. The FLSA requires that employers pay employees at least $7.25 per hour for all hours worked, up to forty hours in a workweek, and a time-and-a-half overtime premium for hours worked over forty.  29 U.S.C. §§ 206-207.

53. Defendants have underpaid overtime by converting hours and minutes worked into decimals, as detailed above.

54. Defendants have further underpaid overtime by misclassifying employees as 1099 independent contractors, as detailed above, and therefore not paying time-and-a-half overtime premiums for hours worked over forty.

55. Defendants' underpayment was and is willful and not based in a good faith belief that their conduct was in accordance with the law.

## SECOND CAUSE OF ACTION

## LOUISIANA WAGE PAYMENT ACT (La. Rev. Stat. §§ 23:631-632)

56. Plaintiff hereby realleges and reincorporates all paragraphs set forth above.

57. Defendants failed to pay Plaintiff all wages owed to her on or before the next regular payday or no later than fifteen days following the date of discharge.

58. Plaintiff has repeatedly demanded payment of wages from Defendants, to no

avail.

59. Defendants' nonpayment was and is willful and not based in a good faith belief that their conduct was in accordance with the law.

60. Defendants' actions violate the Louisiana Wage Payment Act. Plaintiff is entitled to full payment of unearned wages, plus penalty wages according to statute, and recovery of reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

## CONVERSION AND MISAPPROPRIATION

61. Plaintiff incorporates by reference and re-allege each and every allegation contained above as though fully set forth herein.

62. Defendants' actions in withholding monies, in the form of rightfully earned wages, from Plaintiffs and the members of the collective amounts to Defendants' conversion of funds under Louisiana law. See La. Civ. Code art. 2315.

## FOURTH CAUSE OF ACTION

## BREACH OF CONTRACT

63. Plaintiff incorporates by reference and re-allege each and every allegation contained above as though fully set forth herein.

64. Defendants entered into an express or implied contract with Plaintiff and other employees to pay for all hours worked.

65. By underpaying Plaintiff and other employees, as detailed above, Defendants breached this contract.

**WHEREFORE**, Plaintiff respectfully prays for judgment as follows:

    a. For an award of all unpaid wages and overtime according to proof;

b. For an award of liquidated damages pursuant to 29 U.S.C. § 216(b);

c. For an award of reasonable attorney's fees and costs of suit;

d. For damages and penalties under the Louisiana Wage Payment Act;

e. For injunctive or equitable relief as provided by law;

f. For pre and post-judgment interest to the extent provided by law; and

g. For such other and further relief as may be just and proper.

Respectfully Submitted,

*/s/ Charles J. Stiegler*

Charles J. Stiegler, #33456
STIEGLER LAW FIRM LLC
318 Harrison Ave., Suite #104
New Orleans, La. 70124
(504) 267-0777 (telephone)
(504) 513-3084 (fax)
Charles@StieglerLawFirm.com

and

Robert B. Landry III (#18998) (Lead Atty.)
rlandry@landryfirm.com
ROBERT B. LANDRY III, PLC
5420 Corporate Boulevard, Suite 204
Baton Rouge, Louisiana 70808
Telephone: (225) 349-7460
Facsimile: (225) 349-7466